# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ALABAMA
### SOUTHERN DIVISION

| | |
|---|---|
| IN RE: SUBPOENAS SERVED ) | |
| UPON BRUCE BARZE AND ) | |
| BARZE TAYLOR NOLES ) | Case No. _____ |
| LOWTHER LLC (DAVID AND ) | |
| MARY SILLS vs. SOUTHERN ) | |
| BAPTIST CONVENTION, et al., ) | |
| N.D. Tenn., No. 3:23-cv-00478) ) | |

## MOTION TO QUASH AND FOR SANCTIONS

R. Bruce Barze, Jr. ("Barze") and Barze Taylor Noles Lowther LLC ("BTNL"), pursuant to *Federal Rule of Civil Procedure* 45(d)(3), move this Court for an order quashing the subpoenas issued and served on November 15, 2024 by David and Mary Sills on non-parties Barze and BTNL. As further grounds for this Motion, Movants state the following:

### Introduction

Barze and BTNL ask the Court to quash the subpoenas served by Plaintiffs David and Mary Sills (the "Sills"), and issue sanctions against the Sills and/or their attorneys, on the grounds that the subpoenas ignore objections previously served by Barze and BTNL, seek patently privileged information from opposing counsel, and impose an undue burden or expense on BTNL and its client.

This is the second time the Sills have served these subpoenas on Barze and BTNL. The subpoenas were first served on November 4, 2024, but they were defective for failure to comply with the notice requirements of Rule 45(a)(4) and Middle District of Tennessee Local Rule 45.01. The subpoenas also were objectionable because: (1) they sought production of materials that are not relevant to the claims or defenses in the Sills' federal lawsuit pending in Nashville, and (2) they sought production of documents maintained by their opposing counsel that indisputably are protected from discovery by attorney-client privilege, attorney work product, and joint defense privilege. Barze and BTNL have served as counsel opposite the Sills' attorneys since late 2022.

Barze and BTNL objected to the November 4 subpoenas on these bases and invited opposing counsel to "meet and confer" to discuss what documents in BTNL's files could be relevant or non-privileged. Rather than engaging in any communications, the Sills' lawyers merely re-served their subpoenas on November 15, this time after at least complying with Rule 45(a)(4) and LR 45.01. Nevertheless, because the subpoenas—on their face—plainly seek production of post-litigation privileged and irrelevant materials, and the Sills' lawyers proceeded to re-issue them a second time without engaging in good faith discussions beforehand, Movants request the entry of sanctions against counsel for the Sills. At the very least, opposing counsel should be required to reimburse Barze and BTNL for their reasonable

attorneys' fees and costs incurred in responding to the subpoenas and seeking the relief requested in this Motion.

## Background

1. The litigation at issue is styled *Michael David Sills and Mary Sills v. Southern Baptist Convention,* pending in the United States District Court for the Middle District of Tennessee, Nashville Division, No. 3:23-cv-00478 (the "*Sills* case"). The *Sills* case arises from purportedly defamatory statements about Plaintiffs Michael David Sills and Mary Sills. According to the complaint, the defendants conspired to create and succeeded in publishing a false narrative about the Sills to improve their own appearances and reputations.

2. Mr. Sills was a Southern Baptist missiologist, professor, and author in the Southern Baptist Convention.

3. The Sills sued 13 defendants, including the Southern Baptist Convention (the "SBC"), two SBC Presidents, the SBC Executive Committee, two members of the Executive Committee, the Southern Baptist Theological Seminary and its President, Dr. Albert Mohler ("Mohler"), Lifeway Christian Resources ("Lifeway"), two vice presidents of Lifeway—Eric Geiger ("Geiger") and Jennifer Lyell ("Lyell")—and other defendants.

4. According to the complaint, Sills met Lyell when she was 26 years old. According to Mr. Sills, he and Lyell maintained a personal, consensual, prurient, and

3

emotionally intimate relationship. Mr. Sills alleges he did not, at any time, sexually abuse, force himself upon, engage in sexual intercourse with, threaten, or use violence against Lyell. However, Lyell disputes this and has alleged for years that it was not a consensual relationship but, instead, was always sexual abuse that had started while Lyell was a student at the Seminary where Mr. Sills was a professor.

5. In the spring of 2018, Lyell reported this sexual abuse by Mr. Sills to both Geiger and Mohler. Geiger, at that time her supervisor at Lifeway, initiated the disclosure and reporting to Mohler and the Seminary. According to the complaint, Sills, immediately and without controversy, admitted to having an "inappropriate relationship" with Lyell and accepted the SBC's requirement that he leave his position at the Seminary.

6. A few months after Lyell's disclosure, Geiger left Lifeway and moved to California to become senior pastor at Mariners Church, a non-SBC (non-denominational) church located in Orange County.

7. The complaint claims Lyell made a series of statements about the Sills, including that Mr. Sills began sexually abusing her on a mission trip in 2004 and that it continued and escalated for more than a decade. Lyell claims she verbally and physically resisted Mr. Sills in the initial encounter and throughout all subsequent encounters. She states that her relationship with Mr. Sills was always forced, never consensual, and that she always resisted.

4

8.      The Sills allege the foregoing statements are false and malicious and that all the defendants conspired in some sort of public relations strategy in a concerted effort to improve the public image of the SBC at the expense of Mr. Sills. The defendants vigorously deny these allegations.

### The Alabama and Tennessee Lawsuits

9.      On November 21, 2022, the Sills first filed their lawsuit in the Circuit Court of Mobile County, Alabama, Case No. CV-2022-902045. The Sills' lawyers in the Alabama lawsuit included Katherine Barrett Riley of Barrett Law Group, P.A. in Lexington, Mississippi and Shannon M. McNulty of the Clifford Law Offices, P.C. in Chicago, Illinois.

10.     Barze and BTNL represented Geiger in the Alabama lawsuit and filed a motion to dismiss the claims against him based upon a lack of personal jurisdiction.

11.     In the face of motions to dismiss filed by Geiger and the rest of the defendants under Rules 12(b)(2) and 12(b)(6), on May 23, 2023 the Sills filed a motion for voluntary dismissal of their claims without prejudice. Their motion was granted by the Circuit Court of Mobile County that same day.

12.     Meanwhile, on May 11, 2023, Plaintiffs had re-filed their claims as the *Sills* case in federal court in Nashville. Once again, the Sills are represented in the *Sills* case by Katherine Barrett Riley and Shannon M. McNulty.

13. Barze and BTNL represent Geiger in the *Sills* case pending in Nashville federal court.

14. In July 2023, Geiger and other defendants filed motions to dismiss the Sills' claims against them under Rule 12(b)(2) for lack of personal jurisdiction. (Docs. 91, 92). Additionally, Lifeway, Lyell, the Seminary, Mohler, the Executive Committee, the SBC, and other individual defendants moved to dismiss the Sills' claims against them under Rule 12(b)(6) for failure to state a claim.

15. On March 8, 2024, Judge William Campbell granted Geiger's motion to dismiss based on a lack of personal jurisdiction. (Doc. 135). The dismissal order is an interlocutory order because it was not certified as final under Rule 54(b).

16. Given the interlocutory nature of the Geiger dismissal order, as well as the fact Geiger's deposition was expected to be taken before trial, Barze and BTNL have continued to represent Geiger and to monitor the *Sills* case. As part of their representation, they have continued to communicate with Geiger and the insurance company providing his defense (Brotherhood Mutual), and they have continued to coordinate and communicate with counsel for various co-defendants.

17. On October 30, 2024, counsel for Defendants SBC and Lyell, as well as counsel for the Sills (Shannon McNulty), took Geiger's deposition in Irvine, California. As part of his ongoing role as defense counsel, Barze defended the Geiger deposition and met with Geiger beforehand to prepare him for same.

**The Subpoenas**

18. On November 4, 2024, without any prior notice, counsel for the Sills served subpoenas on Barze and BTNL at their office on Lakeshore Drive in Homewood. *See* Exhibit A.

19. However, the November 4 subpoenas were defective for failure to comply with the mandates of Rule 45(a)(4) and Middle District of Tennessee Local Rule 45.01. Specifically, Rule 45(a)(4) requires—before a subpoena is served—that "a notice and a copy of the subpoena must be served on each party" when "the subpoena commands the production of documents, electronically stored information, or tangible things or the inspection of premises before trial…." Similarly, LR 45.01(d) provides that a subpoena be served on all counsel at least two business days prior to service. Counsel for the Sills did not comply with these rules requiring notice to the other parties before serving Barze and BTNL with the subpoenas.

20. Following receipt of the November 4 subpoenas, Barze and BTNL objected to the subpoenas in accordance with Rule 45(d)(2)(B). A copy of the November 5, 2024 correspondence objecting to the subpoenas is attached as Exhibit B. Importantly, that correspondence invited the Sills' lawyers to contact Barze if they "believe[d] there are any relevant, non-privileged documents contained in BTNL's files that would be responsive to your subpoenas."

21. Barze never received any response from either Ms. Riley or Ms. McNulty.

22. Instead, on November 12, 2024, Barze was advised by counsel for a co-defendant of Plaintiffs' Notice Of Intent To Serve Alias Subpoenas on Barze and BTNL served by Mses. Riley and McNulty. *See* Exhibit C.

23. On November 15, 2024, Barze and BTNL were served via process server with the Alias Subpoenas (Exhibit D) at their offices in Homewood.

**The Sills' Subpoenas should be quashed as an improper attempt to obtain discovery from opposing counsel of irrelevant and privileged materials.**

As an initial matter, with respect to the subpoena issued to Barze personally, any documents and files maintained relating to the *Sills* case are BTNL's files, not Barze's personal documents. Thus, the subpoena issued to Barze personally is misplaced. Even if the subpoena was not defective and objectionable based on relevance, undue burden, and privilege (which objections Barze adopts as set forth more fully below), Barze does not have any personal documents responsive to the subpoena.

As for the BTNL subpoena, BTNL objects on the grounds that the subpoena is unduly burdensome and seeks production of documents that are not relevant and that are protected by the attorney-client privilege, attorney work product, and common interest/joint defense privilege. As an initial matter, the subpoena is unduly burdensome because it would require BTNL to scour its defense file and create a

8

privilege log with every email and other communication between BTNL and counsel for the co-defendants or between BTNL and Geiger's insurer. This is precisely the type of burden parties are instructed to avoid when serving a subpoena.

Frankly, it is difficult to conceive of any of BTNL's communications "with any person and/or entity … except for Eric Geiger," concerning the *Sills* case that would not be protected by privilege and/or the work product doctrine. For instance, BTNL's communications with and reports sent to Brotherhood Mutual (Geiger's insurer that retained BTNL) are privileged attorney-client communications. *See, e.g.,* TENN. CODE ANN. § 23-3-105 (1994) ("No attorney. . . shall be permitted. . . to disclose any communication made to the attorney. . . during the pendency of the suit, before or afterwards …."); *Blaylock and Brown Const., Inc. v. AIU Ins. Co.*, 796 S.W.2d 146, 155 (Tenn. App. 1990) ("Clearly, AIU hired an attorney to represent its insured in an action against the insured. In these circumstances, the attorney is the attorney for the insured. *Formal Ethics Opinion* 85-F-100 (9/30/85). Thus, correspondences from the attorney to the insurance company and from the insurance company to the attorney is controlled by the attorney-client privilege between the insured and the attorney.").[1]

---

[1] Federal courts sitting in diversity cases must comply with Federal Rule of Evidence 501: "[I]n a civil case, state law governs privilege regarding a claim or defense for which state law supplies the rule of decision."

Likewise, any communications exchanged with counsel for the other defendants in the *Sills* case contain various attorneys' mental impressions, as well as trial and case strategy, and all were prepared during the pendency of the lawsuit—in anticipation of further litigation. In Tennessee, where the *Sills* case is pending, the common interest privilege permits the participants in a joint defense to communicate among themselves and with their attorneys on matters of common legal interest for the purpose of coordinating their joint legal strategy. *See Boyd v. Comdata Network, Inc.*, 88 S.W.3d 203 (Tenn. Ct. App. 2002). Many courts have held that the attorney-client privilege gives rise to a concomitant "joint defense privilege" which "serves to protect the confidentiality of communications passing from one party to the attorney for another party where a joint defense effort or strategy has been decided upon and undertaken by the parties and their respective counsel." *U.S. v. Almeida*, 341 F.3d 1318, 1324 (11th Cir. 2003) (citing U*.S. v. Schwimmer*, 892 F.2d 237, 243 (2d Cir. 1989)). As the Second Circuit observed, "The need to protect the free flow of information from client to attorney logically exists whenever multiple clients share a common interest about a legal matter." *Schwimmer,* 892 F.2d at 243-44.

"[T]he joint defense doctrine is an extension of the work-product doctrine and allows parties facing a common litigation opponent to exchange privileged communications and attorney-work-product in order to prepare a common defense without waiving either privilege." *Fojtasek v. NCL*, 262 F.R.D. 650, 654 (S.D. Fla.

2009) (incident report prepared by tour operator was protected work-product under the joint defense theory because at the time the report was prepared, the tour operator and cruise line had a common interest in defending any claim related to the zip-line incident); *see also Mitsui Sumitomo Ins. Co. v. Carbel, LLC*, 2011 WL 2682958 (S.D. Fla. July 11, 2011).

There is no dispute that Barze and BTNL, on the one hand, and Riley and McNulty, on the other, are opposing counsel. Indeed, Barze and BTNL have been representing Geiger against the Sills' claims for nearly two years, since late 2022, when the Sills filed their first case in Alabama.

Discovery directed to opposing counsel is disfavored. *Theriot v. Parish of Jefferson*, 185 F.3d 477, 491 (5th Cir. 1999) ("federal courts have disfavored the practice" of seeking discovery from a party's attorney and have cautioned that "the practice should be employed only in limited circumstances"). Discovery from an opposing counsel is limited to situations where the party seeking the discovery has shown that (1) no other means exist to obtain the information;[2] (2) the information sought is relevant and nonprivileged; and (3) the information is crucial to the preparation of the case. *Nationwide Mut. Ins. Co. v. Home Ins. Co.*, 278 F.3d 621, 628 (6th Cir. 2002) (citing *Shelton v. Am. Motors Corp.*, 805 F.2d 1323, 1327 (8th

---

[2] To the extent the Sills' attorneys believe joint defense communications are discoverable, they should seek those communications from parties who are still defendants in the *Sills* case, not from BTNL.

11

Cir. 1986)). *See also Ellipsis, Inc. v. The Color Works, Inc.*, 227 F.R.D. 496 (W.D. Tenn. May 19, 2005) (holding *Shelton* test should be applied when attorney to whom discovery is directed is either trial/litigation counsel or the subject matter of the discovery may elicit litigation strategy). "The work product doctrine not only protects from discovery materials obtained or prepared in anticipation of litigation, but also the attorney's mental impressions, including thought processes, opinions, conclusions, and legal theories." *Shelton*, 805 F.2d at 1328 (citing *Hickman v. Taylor*, 329 U.S. 495, 511 (1947)). The Sixth Circuit has applied *Shelton's* second prong to quash subpoenas against opposing counsel where the information sought was privileged. *Alomari v. Ohio Dept. of Public Safety*, 626 Fed. Appx. 558, 574 (6th Cir. 2015); *see also Avis Rent a Car Sys., LLC v. City of Dayton, Ohio*, No. 3:12-cv-399, 2013 WL 3778922, at *2 (S.D. Ohio July 18, 2013).

Federal district courts in the Eleventh Circuit have held in analogous situations that "depositions of attorneys inherently constitute an invitation to harass the attorney and parties, and to disrupt and delay the case" and that the party seeking such a deposition "must demonstrate that the deposition is the only practical means available of obtaining the information." *Davis v. M.S.A. Inc.*, No. 1:20-CV-449-MHC, 2021 WL 8998915, at *3 (N.D. Ga. Aug. 16, 2021) (quoting *W. Peninsular Title Co. v. Palm Beach Cnty.*, 132 F.R.D. 301, 302 (S.D. Fla. 1990)). The party seeking discovery from an attorney must also demonstrate that the information

sought is nonprivileged and crucial to the preparation of the case. *Id.; see also In re Douglas Asphalt Co.*, 436 B.R. 246 (Bankr. S.D. Ga. 2010) (holding that party seeking to depose opposing counsel was required to satisfy Eighth Circuit's *Shelton* test).

The Sills cannot demonstrate that *any* of the information sought by their subpoenas is relevant or nonprivileged, much less crucial to the preparation of their case. There simply is no legitimate justification for subpoenas directed to one of their opposing counsel in the *Sills* case.

In fact, the Middle District of Tennessee has entered an order recognizing the presumptively privileged nature of documents generated after the filing of a complaint—which are the only documents the Sills' subpoenas are seeking. The Court's September 12, 2018 Administrative Order No. 174-1 entitled "Default Standard for Discovery of Electronically Stored Information," provides in Section 8.b. that, "Parties are not required to include on privilege logs any document generated after the filing of the complaint." The very fact that the Sills' subpoenas only seek documents from BTNL that have been created since the litigation has been ongoing is, in itself, burdensome and demonstrates the presumptively privileged nature of the requested documents.

Rule 45(d)(3)(A)(iii) provides as follows:

(3) *Quashing or Modifying a Subpoena.*

> (A) *When Required*. On timely motion, the court for the district where compliance is required must quash or modify a subpoena that:
>
>> (i) fails to allow a reasonable time to comply;
>>
>> (ii) requires a person to comply beyond the geographical limits specified in Rule 45(c);
>>
>> (iii) requires disclosure of privileged or other protected matter, if no exception or waiver applies; or
>>
>> (iv) subjects a person to undue burden.

Because the subpoenas would require disclosure of privileged or other protected matter, because it is unduly burdensome to require BTNL to generate a privilege log of all post-litigation communications, and because issuance of the subpoenas appears intended to harass opposing counsel, the Court should quash the subpoenas.

**Request for Sanctions**

Rule 45 imposes an affirmative duty on attorneys issuing subpoenas to avoid imposing undue burden or expense on any person subject to the subpoena. FED. R. CIV. P. 45(d)(1). "The court for the district where compliance is required must enforce this duty and impose an appropriate sanction—which may include lost earnings and reasonable attorney's fees—on a party or attorney who fails to comply." *In re Modern Plastics Corp.*, 890 F.3d 244, 250-51 (6th Cir. 2018) (affirming bankruptcy court's "discovery sanction for misuse of subpoena power"

and $180,000 award for fees and expenses incurred in responding to subpoenas, including subpoenas to counsel for creditor involved in adversary proceeding). Courts have noted that the injury resulting from attorney misuse of the subpoena power is not limited to the harm it inflicts upon the parties. Rather, misuse of the subpoena power also compromises the integrity of the court's processes. *United States v. Santiago-Lugo*, 904 F. Supp. 43, 48 (D.P.R. 1995) (recognizing that "[t]he mere fact that an attorney abuses the subpoena power directly implicates the Court itself and causes an embarrassment to the institution"). With the power to coerce production goes the "increased responsibility and liability for the misuse of the power." *See* FED. R. CIV. P. 45 committee note, 1991 amendments. When that power is misused, public confidence in the integrity of the judicial process is eroded.

The actions of the Sills' attorneys' here go beyond the pale and constitute a harassment of Geiger's counsel and misuse of the discovery tools afforded under the Rules. Requiring non-parties, much less opposing counsel, to respond to such baseless and invasive demands would create an undue burden on Barze and BTNL and will foster unnecessary litigation costs. *See, e.g., Saint-Jean v. Emigrant Mortgage Co.*, No. 11-CV-2122 (SJ), 2015 WL 13735434, at *5 (E.D. N.Y. Oct. 7, 2015) ("Where, as here, a challenged subpoena [to plaintiff's counsel] should not have been issued, everything done in response to it constitutes an 'undue burden or expense within the meaning of' Rule 45(d)(1), **particularly where the subpoena**

15

**was served on counsel for a party to the litigation**.") (emphasis added); *see also, Am. Int'l Life Assur. Co. of N.Y. v. Vazquez*, No. 02 Civ 141(HB), 2003 WL 548736, at *3 (S.D.N.Y. Feb. 25, 2003) (imposing Rule 45 sanctions where a "sweeping subpoena" addressed to opposing counsel, seeking "[a]ny and all records pertaining to [a related interpleader action] . . . unnecessarily compelled [opposing counsel] to sift through every document in its files and create a privilege log").

The Eighth Circuit in *Stecklein & Rapp Chartered v. Experian Information Solutions, Inc.*, 113 F.4th 858 (8th Cir. 2024) recently reviewed a similar discovery dispute and request for sanctions and upheld the district court's $93,000 award in attorneys' fees and costs. There, the law firm (Stecklein & Rapp) for plaintiffs in an underlying Fair Credit Reporting Act case against Experian was served with subpoenas seeking extensive documents related to the plaintiffs, as well as firm's business operations, communications, and interactions with other clients. Stecklein & Rapp petitioned the relevant district court to quash the subpoenas and award sanctions pursuant to Rule 45(d)(1). The district court granted and awarded the $93,243.50 incurred by Stecklein & Rapp to quash the subpoenas. *Stecklein & Rapp*, 113 F.4th at 861.

In upholding the district court's decision and $93,243.50 award, the Eighth Circuit emphasized that the subpoenas were excessively broad, irrelevant to Experian's defenses, and unnecessary for resolving the FCRA claims. *Id.* at 862.

16

Requests for information about other clients, communications, advertising, and business structure exceeded what was proportional under Rule 26(b)(1). *Id.* Furthermore, and like the subpoenas issued here, compliance would have required significant resources and threatened attorney-client privilege and third-party privacy in violation of Rule 45 and its intended purpose. *Id.* at 863. *See also, Saint-Jean*, 2015 WL 13735434, at *7 ("The far-reaching Subpoenas pose serious concerns about privileged and confidential materials, and responding to them required plaintiffs' counsel to expend considerable resources in a limited amount of time."); *Vazquez,* 2003 WL 548736, at *2 ("In light of the communications from Stephenson conveying his client's unwillingness to waive the attorney-client privilege, thus ethically and legally binding him from testifying, I am at a loss to understand how Rudick could in good faith believe that the communications sought through the subpoena he issued was appropriate. Rudick may be well advised to follow Stephenson's advice of returning to law school. . . if he actually believes that relevance and lack of prejudice to [the client] constitute valid grounds for Stephenson to violate the oldest privilege for confidential communications known to common law.").

    Notably, "[i]t makes no difference" if the party issuing the subpoena believes it acted in good faith as "there is no good-faith defense to issuing an overly broad subpoena." *Id.* (citing *Mod. Plastics,* 890 F.3d at 251 (explaining that bad faith is

17

sufficient but not necessary to impose sanctions under Rule 45(d)(1)); *see also Saint-Jean*, 2015 WL 13735434, at *5 ("Simply put, whether or not the Subpoenas were issued in good faith, they were unnecessarily cumulative, and any desired additional information could and should have been sought through less intrusive means.").

Because the subpoenas to BTNL and Barze seeking communications "with any person and/or entity … except for Eric Geiger," concerning the *Sills* case are *prima facie* improper, and Plaintiffs' counsel did not take the "reasonable steps" that Rule 45 imposes on the subpoenaing party to avoid overburdening the subpoenaed party, sanctions to recoup BTNL's costs of objecting to and moving to quash these subpoenas are appropriate under Rule 45.

## Conclusion

There is no legitimate basis upon which the Sills can subpoena documents and communications maintained by the law firm that represents one of the defendants in their case. Plaintiffs cannot meet the *Shelton* factors, and their subpoenas should be quashed. Moreover, because Plaintiffs re-issued their subpoenas with full knowledge their subpoenas seek only privileged and irrelevant documents, thus necessitating this motion practice, counsel for the Sills should be sanctioned and ordered, at a minimum, to pay the attorneys' fees and costs incurred in responding to the subpoenas and seeking this relief from the Court.

WHEREFORE, the premises considered, Movants R. Bruce Barze, Jr. and Barze Taylor Noles Lowther LLC respectfully move this Honorable Court to enter an Order:

(1) Quashing the subpoenas issued to Barze and BTNL;

(2) Imposing sanctions on counsel for the Sills for their frivolous and improper issuance of subpoenas to Barze and BTNL; and

(3) Granting such other, further, or different relief the Court deems proper.

Dated this 26th day of November 2024.

*s/ M. Todd Lowther*
R. Bruce Barze, Jr. (asb-8163-R71R)
M. Todd Lowther (asb-3992-A60L)
BARZE TAYLOR NOLES LOWTHER LLC
2204 Lakeshore Drive, Suite 425
Birmingham, Alabama 35209
(205) 872-1032
bbarze@btnllaw.com
tlowther@btnllaw.com

*Counsel for Movants R. Bruce Barze, Jr. and Barze Taylor Noles Lowther LLC*

## **CERTIFICATE OF SERVICE**

I hereby certify that the foregoing Motion was filed electronically on this 26th day of November 2024 and that I have served a copy of the foregoing on the following counsel of record:

Gary E. Brewer
Brewer and Terry, P.C.
1702 W. Andrew Johnson Hwy.
P.O. Box 2046
Morristown, TN 37816

John W. Barrett
Katherine Barrett Riley
Barrett Law Group, P.A.
P.O. Box 927
404 Court Square North
Lexington, MS 39095

Shannon M. McNulty
Clifford Law Office, P.C.
120 N. LaSalle Street, 36th Floor
Chicago, IL 60602

James C. Bradshaw, III
Wyatt, Tarrant & Combs, LLP
333 Commerce Street, Suite 1050
Nashville, TN 37201

Byron Leet
Thomas E. Travis
Wyatt, Tarrant & Combs, LLP
400 West Market Street, Suite 2000
Louisville, KY 40202

Ronald G. Harris
Philip N. Elbert
Olivia R. Arboneaux
Neal & Harwell, PLC
1201 Demonbreun Street, Suite 1000
Nashville, TN 37203

Matthew C. Pietsch
Gordon Rees
4031 Aspen Grove Drive
Suite 290
Franklin, TN 37067

Brigid M. Carpenter
Ryan P. Loofbourrow
Baker, Donelson, Bearman, Caldwell & Berkowitz
1600 West End Avenue, Suite 2000
Nashville, TN 37203

John R. Jacobson
Katharine R. Klein
Riley & Jacobson
1906 West End Avenue
Nashville, Tennessee 37203

Alan S. Bean
Starnes Davis Florie LLP
3000 Meridian Boulevard, Suite 350
Franklin, Tennessee 37067

*s/ M. Todd Lowther*
OF COUNSEL